Whitaker, Judge,
dissenting:
This case presents a temptation to which we must not yield.
While serving as a Captain in the latter part of September 1945, plaintiff was recommended for promotion from Captain to Major, and undoubtedly would have been so promoted had the recommendation reached the approving authority. But it did not reach the approving authority because it was lost in an airplane accident. Unfortunate as this was, plaintiff did not get the promotion he, no doubt, would have gotten otherwise. He now asks that he be promoted nwie fro tunc. This has been denied by the Army and he appeals to us for, relief.
Let us remind ourselves once again that we are not running the Army. That is the business of the Generals and their civilian superiors — the Secretary of the Army, the Secretary of Defense, and the President. We know this like we know the Lord’s Prayer; we subscribe to it, but, like the Lord’s Prayer, it does not always dictate what we do.
The question is, should plaintiff have been promoted when it was learned he had been recommended for promotion, and, that not having been done, should the Secretary of the Army have done so mmo fro time in 1954.
One immediately answers that was a matter for the Secretary to determine; it is none of the court’s business. And that is true, unless the Secretary acted arbitrarily or otherwise unlawfully in not promoting him mmo fro time. Only in such case can we do anything about it; we cannot otherwise interfere.
Did the Secretary act unlawfully ? It was the Secretary, or his authorized subordinates, who had the lawful authority to promote or to deny promotion to Army officers. When the matter finally reached him, through the chain of command, he decided plaintiff should not be promoted mmo fro tunc. That would seem to have been within his authority. *391 As a matter of general policy in the government of the Army, he thought it unwise to authorize the promotion nv/nc pro 'tunc. That decision was his to make.
But it is said this was contrary to the findings of the Correction Board and, therefore, arbitrary. It was not contrary to the -findings of fact of the Correction Board. It found as a fact only this: that plaintiff had been recommended for promotion, but that the recommendation had been lost in an airplane accident, and that it would have been approved had it reached the Commanding General, Chinese Combat Comm artel.
These were the facts. Based upon them, the Correction Board concluded that an injustice had been done plaintiff. Then it said, “in consideration of the foregoing findings and conclusions,” [Emphasis added] in its opinion, it should be considered as done what it thought would have been done except for the misadventure. It recommended accordingly.
The Secretary of the Army accepted as true the findings of fact of the Board, and he, no doubt, agreed that an injustice had been done plaintiff, but then he considered what he could do about it. Should he or not accept the recommendation of the Board? He decided that he should not.
Was that within his authority? How can that be denied? He was the head of the Army. It was he who laid down the policy for its governance. It was he who promulgated the regulations prescribing what his subordinates should do. Whether, in the circumstances of this case, it was good policy for the Army to antedate plaintiff’s promotion was for the head of the Army to decide. He had promulgated no regulations which authorized the antedating of plaintiff’s promotion and there was no statute that authorized it. Under the regulations, an officer’s promotion was effective on the date of its approval by the person authorized to approve it. If an exception was to be made, it was the Secretary himself who had to authorize it.
Certainly the Secretary did not abrogate his authority to run the Army, when he appointed the Correction Board. He still dictated the policy to be followed. He was still the head of the Army — not the Correction Board.
*392 In Eicks v. United States, 145 Ct. Cl. 522, 172 F. Supp. 445 (1959), of course we did not intend to bold otherwise. In Proper v. United States, 139 Ct. Cl. 511, 154 F. Supp. 317 (1957), tbe Secretary disregarded tbe findings of fact of the Correction Board. Tbis we said be could not do, but we said further:
On tbe other band, we do not suggest that tbe Secretary may not overrule the recommendations of tbe Correction Board where tbe findings of that Board are not justified by tbe record on which the findings were made.
139 Ct. Cl. at 526, 154 F. Supp. at 326. This, of course, is what he did in tbis case: He accepted tbe findings of fact of tbe Correction Board and he probably concluded therefrom, as did tbe Board, that tbis worked an injustice on plaintiff, but nevertheless, as a matter of policy, tbe remedy suggested by tbe Board be thought was unwise.
Tbis was a decision be was clearly authorized to make. It is not within our province to overrule him.
For these reasons I must respectfully dissent.
In accordance with the opinion of the court and a memorandum report of tbe commissioner as to the amount due thereunder, it was ordered on November 16,1964, that judgment for tbe plaintiff be entered for $4,970.27.